UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Michael Tyrone Mack,<br><br>                          Plaintiff,<br><br>v.<br><br>CSX Transportation, Inc.,<br><br>                          Defendant. | No. _____<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1. CSX Transportation, Inc., one of the largest railroads in the United States, operates a 365-days-a-year business, meaning employees are needed for work on weekends and holidays. While CSX employees understand that working on weekends and holidays comes with the territory, they did not anticipate having to work through serious illnesses, miss their children's births, or choose between caring for their sick loved ones and keeping their jobs.

2. These activities, of course, make up the core substantive conduct protected by the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (FMLA). Yet CSX has engaged in a brazen pattern and practice of unlawfully discouraging FMLA leave and retaliating against workers who rely on the FMLA's protections.

3. CSX has done so in two ways. *First*, in 2015, the company implemented an attendance policy that explicitly punishes employees for taking lawful FMLA leave. The policy assigns negative points for absences but allows employees to remove points through subsequent uninterrupted attendance over a specified period of time. Employees who take FMLA leave during the remediation period, however, are deemed ineligible to reduce their points. As a consequence, employees who have taken FMLA leave are treated more unfavorably than those who have not.

1

Making matters worse, CSX's attendance policy singles out FMLA leave from other forms of leave. An employee who takes leave for "approved vacation," "personal leave," "jury duty," "work-related illness or injury with valid doctor's note" or "bereavement leave," among others, maintains his eligibility to remove negative points from his record. CSX's attendance policy effectively discriminates against workers who rely on FMLA leave and forces those employees to choose between using their FMLA leave or returning to CSX's good graces—(and avoiding termination)—they cannot do both.

4. *Second*, beginning in 2017 or earlier and continuing to the present, CSX has terminated or suspended hundreds of employees on the allegation that these employees had fraudulently taken FMLA leave. CSX's large-scale purge of its workforce culminated immediately after the 2017 holiday season. One by one, employees learned that their holiday gift from CSX for the exercise of federally protected FMLA rights was a suspension or pink slip. CSX's allegations of fraud were not only false but baseless. CSX punished these employees without any evidence of fraud. On the contrary, these workers *substantiated* their entitlement to FMLA leave. But CSX terminated or suspended them anyways.

5. CSX's genuine motivations were crystal clear. Through its actions, CSX sought to chill the lawful use of FMLA leave and punish workers who took FMLA leave. Honoring the FMLA requires businesses to bear the costs of retaining a greater number of employees to cover all shifts. These costs can be especially acute for businesses like CSX who operate seven days a week, 365-days-a-year, including on weekends and holidays. By disregarding the FMLA's clear mandate, CSX saved significant sums of money by reducing its total workforce, limiting its employees' lawful use of FMLA leave, and sending a clear message to the remaining employees: take FMLA leave at your own peril.

6. CSX, through its conduct, has violated the FMLA's anti-retaliation and anti-interference provisions. 29 U.S.C. § 2615(a)(1)-(2). These violations were the subject of a putative class action, *Bell v. CSX Transportation, Inc.*, 3:24-cv-01416 (D. Mary.), which stayed the statute of limitations for all putative class members pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). The putative class members include Michael Tyrone Mack, who brings this suit because the plaintiffs in *Bell* forwent seeking class certification.

## PARTIES

7. Mack, who has worked for CSX for more than seven years, resides and works for CSX in this district.

8. CSX, a Class I railroad, operates across the eastern United States, including in this district.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Mack's claims under 28 U.S.C. § 1331.

10. Venue is proper under 28 U.S.C. § 1391 because Mack resides and works for CSX in this district.

## FACTUAL ALLEGATIONS

11. CSX operates a 365-day-a-year business, meaning employees are needed on weekends and holidays.

12. In 2017, CSX instituted precision scheduled railroading.

13. CSX instituted precision scheduled railroading to increase its profit.

14. One of the ways in which precision scheduled railroading increases profit is by reducing the number of employees.

3

15. While employees know that employment with CSX means having to work on weekends and holidays, they did not anticipate having to work through illnesses, miss their children's births, or choose between working and caring for their sick loved ones.

16. Many employees have relied on FMLA leave.

17. Employees' lawful use of FMLA has prevented CSX from reducing its workforce in the way it would like.

18. CSX has therefore sought to curb its employees' lawful use of FMLA in two ways.

19. *First*, CSX has sought to deter its employees from using FMLA by, in 2015, implementing an attendance policy, called the "Crew Attendance Point System," or "CAPS," that penalizes employees for taking FMLA leave.

20. Under the CAPS policy, CSX assigns points to employees who miss work. When employees accrue a certain number of points, they are terminated. CSX erases points from the employees' records when the employees go a certain period of time without missing a day of work.

21. However, under the terms of the policy, employees who take FMLA leave during that same remediation time period are not eligible to have points erased from their record. Under CSX's attendance policy, in other words, an employee who does not miss work for the period specified in the CAPS policy will have points removed from his record. A second employee, who takes a single day off work to attend the birth of his child but is otherwise identically situated to the first employee, *retains* his points and remains on probation—and at a heightened risk of termination. As a consequence, employees who have taken FMLA leave are treated less favorably than those who did not.

22. Making matters worse, CSX's attendance policy effectively singles out FMLA leave from other forms of leave. An employee who takes leave for "approved vacation," "personal

4

leave," "jury duty," "work-related illness or injury with valid doctor's note" or "bereavement leave," among others, maintains his eligibility to remove negative points from his record. CSX's attendance policy effectively discriminates against workers who rely on FMLA leave and forces those employees to choose between using their FMLA leave or returning to CSX's good graces—they cannot do both.

23. CSX's purpose in enacting the CAPS policy was to discourage the lawful use of FMLA leave and punish employees who took FMLA leave.

24. *Second*, beginning in 2017 or earlier, CSX has engaged in a concerted campaign to purge itself of a significant portion of its employees who rely on FMLA leave and scare the remainder of its workforce from taking such leave by disciplining and terminating employees who use FMLA leave on weekends and holidays.

25. CSX's campaign culminated in January of 2018, when CSX charged more than 100 employees who took FMLA leave on Christmas Eve, Christmas Day, New Year's Eve, or New Year's Day with a workplace rule violation—dishonesty—and removed them from service without pay for supposedly using their FMLA leave solely to avoid working on a holiday.

26. CSX charged these employees with a workplace rule violation without having any reason to believe any of them had abused their FMLA leave other than they had used FMLA in a pattern that CSX believed was suspicious.

27. To derive what constituted a suspicious pattern, CSX did not use any kind of statistical analysis. Rather, CSX determined what constituted a suspicious pattern via its involved managers' intuition.

28. Under CSX's collective bargaining agreements with its employees' unions, the charged employees had a right to an internal hearing before they could be disciplined. The

5

hearings, however, are not a neutral forum where an employee's responsibility for a supposed rule violation is fairly and independently determined. Instead, such hearings operate as a perfunctory means to assign blame to employees regardless of their actual responsibility for workplace rule violations. Hearing officers, who act as both prosecutor and judge, are members of management who are appointed by the company. Hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply; and employees are frequently found responsible based entirely on hearsay. The company can compel witnesses to appear, but employees cannot. The company may conduct an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence—to the employee charged. And the hearings typically take less than one day. It is well known that these hearings almost always are decided in favor of the railroad.

29. At the hearings, CSX unlawfully placed the burden on the employees to reveal more information about their and their loved ones' medical conditions than the FMLA requires.

30. Mack suffers from diabetes and neuropathy.

31. Mack's diabetes and neuropathy have necessitated continuing treatment by a health care provider.

32. When his conditions flare up, Mack is unable to safely do his job.

33. Accordingly, Mack requested intermittent FMLA leave.

34. CSX approved Mack's request for intermittent FMLA leave.

35. Nevertheless, pursuant to CSX's CAPS policy, Mack's use of FMLA leave caused negative points to remain on his record.

36. To make matters worse, CSX accused Mack of abusing his FMLA leave and suspended him.

6

37. CSX had no reason to believe Mack was abusing his intermittent FMLA leave other than him having taken the leave in what it believed was a suspicious pattern.

38. Regarding that supposed pattern, it should not have come as a surprise to CSX that Mack was more likely to need FMLA leave on holidays. For many people, neuropathy tends to flare up during the holidays, whether from their normal routine being interrupted, causing them to forget the healthy habits they have, their food intake changing and them eating things that are less healthy and full of sugar, them not exercising like they had been, it being colder outside, which restricts blood vessels and therefore blood flow to their limbs, causing pain, or they have an underlying medical condition that flares up, like diabetes, due to suddenly eating a lot of sweets and carbs.

39. It is also worth mentioning that no other railroad has used just a supposedly suspicious pattern of taking FMLA leave to justify terminating an employee.

40. Rather, when a railroad believes that its employee's pattern of FMLA use is suspicious, it reviews the employee's social media and/or hires a private investigator to follow the employee, disciplining the employee only if such investigation confirms they are misusing their FMLA leave.

41. Recognizing that it is best practice to discipline employees for FMLA abuse only upon confirmation of a supposedly suspicious pattern of use via an investigation of the employees' social media and/or having the employee surveilled, this is also what CSX typically does.

42. Why it did not do so for Mack is not at all clear.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FMLA—INTERFERENCE

43. The FMLA entitles employees to up to twelve weeks of leave during any twelve-

7

month period for certain reasons, including the employee's serious health condition. *See* 29 U.S.C. § 2612(a)(1).

44. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." *See* 29 U.S.C. § 2615(a)(1).

45. CSX interfered with, restrained, and denied the exercise of Mack's protected rights when it, among other things, disqualified him from having attendance points expunged, charged him with a workplace rule violation for taking FMLA leave, removed him from service for the supposed violations, and suspended him for using FMLA leave.

46. Because CSX violated the FMLA, Mack is entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Mack is also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

## COUNT II
## VIOLATIONS OF THE FMLA—DISCRIMINATION

47. The FMLA makes it is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *See* 29 U.S.C. § 2615(a)(2).

48. CSX violated Mack's rights under the FMLA when, among other things, it disqualified him from having attendance points expunged, charged him with a workplace rule violation for using taking FMLA leave, removed him from service for the supposed violations, forced him to defend himself from such charges by having him submit more information about the condition that necessitated his FMLA leave than is allowed under the law, and suspended him for

taking FMLA leave.

49. Because CSX violated the FMLA, Mack is entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Mack is also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

## PRAYER FOR RELIEF

50. Mack prays for relief as follows:

- An order expunging all discipline related to the use of FMLA from Mack's work records;

- An order requiring CSX to pay Mack an award for compensatory damages, damages for loss of income, back pay, lost benefits, consequential damages, front pay, liquidated damages, and other damages in an amount to be determined by the trier of fact;

- An order requiring CSX to pay to Mack an award for costs (including litigation and expert costs), disbursements, interest, and attorneys' fees;

- An order enjoining CSX from disqualifying employees who take FMLA leave from having their attendance points reduced and declaring such conduct to be in violation of the FMLA; and

- An order enjoining CSX to cease engaging in a pattern and practice of retaliating against employees for taking FMLA leave and declaring such conduct to be in violation of the FMLA.

51. In addition to the foregoing, Mack also seeks such other relief as the Court deems just and proper.

Dated: April 9, 2025　　　　　　　　　　**PLAINTIFF'S COUNSEL**

　　　　　　　　　　　　　　　　　　　　/s/ Dan Francis
　　　　　　　　　　　　　　　　　　　　Dan Francis (NC Bar No. 44131)
　　　　　　　　　　　　　　　　　　　　Dan Francis Law Firm PLLC

9

406 W. Center Street
Lexington, NC 27292
Phone: (336) 300-8049
Fax: (866) 751-3933
Email: Dfrancis@DanFrancisLawFirm.com

Nicholas D. Thompson
(pro hac vice application forthcoming)
CASEY JONES LAW FIRM
323 N. Washinton Ave., Suite 200
Minneapolis, MN 55401
Phone: (757) 477-0991
Fax: (612) 677-3050
Email: nthompson@caseyjones.law